4 F.3d 614
 KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, Plaintiff-Appellant,
v.
REIMER & KOGER ASSOCIATES, INC., a Kansas Corporation;
Ronald Reimer, an individual; Kenneth H. Koger, an
individual; Clifford W. Shinski, an individual; Brent
Messick, an individual; Robert Crew, an individual; Frank
Morgan, an individual; Sherman Dreiseszun, an individual;
Leland Gerhart, an individual; I.I. Ozar, an individual;
Raymond Gifford, an individual; Harry S. Jonas, an
individual; Ralph E. Kiene, an individual; Randall M. Nay,
an individual; Frank Sebree, an individual; Tony Salazar,
an individual; Philip Pistilli, an individual; Michael K.
Russell, an individual; Gage & Tucker, a law partnership;
Peat, Marwick, Mitchell & Co., an accountancy firm; KPMG
Peat Marwick, an accountancy firm; Robert Spence, an
individual; Defendants-Appellees .
Frank MORGAN; Sherman Dreiseszun; Leland Gerhart; I.I.
Ozar; Raymond Gifford; Ralph E. Kiene; Randall
M. Nay; Tony Salazar; Philip Pistilli,
Third-Party Plaintiff-Appellees,
v.
RESOLUTION TRUST CORPORATION, Third-Party Defendant-Appellee.
 No. 93-1794.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1993.
Decided Sept. 2, 1993.
Rehearing and Suggestion for Rehearing En Banc Denied Oct. 12, 1993.
 
 Thomas E. Deacy, Jr., Kansas City, MO and Leonard M. Ring, Chicago, IL, argued (Debra A. Thomas and Robin LaFollette, Chicago, IL, John Terry Moore and Brian McLeod, Wichita, KS, on the brief), for appellant.
 Timothy P. Collins, Detroit, MI, argued (Richard C. Sanders and Elizabeth Joliffe Basten, Detroit, MI, David A. Vorbeck, Overland Park, KS, James W. Tippin and Carmen F. Moody, Kansas City, MO, on the brief), for Resolution Trust.
 Charles W. German, Kansas City, MO, argued (Brant M. Laue, Robert J. Campbell and James E. Kelley, Jr., on the brief), for Morgan, Dreiseszun, Gerhart, Ozar, Gifford, Kiene, Nay, Salazar, and Pistilli.
 Dan K. Webb, Chicago, IL, argued (Kurt L. Schultz, Jerome W. Pope and Thomas C. Cronin, on the brief), for Gage and Tucker.
 Richard F. Adams and Rodney J. Hoffman, Kansas City, MO, argued, for Ronald Reimer.
 Kathleen A. Hardee of Kansas City, MO, argued, for Kenneth Koger.
 Gregory F. Maher and Alice G. Amick, Overland Park, KS, argued, for Reimer & Koger Associates, Inc., Clifford W. Shinski, Brent Messick and Robert Crew.
 Before McMILLIAN, JOHN R. GIBSON, and HANSEN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The Kansas Public Employees Retirement System appeals from a district court[1] order denying its motion to remand this action to a Shawnee County, Kansas, district court. KPERS argues that because the state court severed the original claims from the third-party claims before the third-party defendant, the Resolution Trust Corporation, removed the case to federal court, only the third-party claims could be removed. KPERS also argues that the district court erred in holding that the third-party plaintiffs' claim for indemnification against the RTC was not frivolous under 12 C.F.R. Sec. 545.121 (1992). We affirm.
 
 
 2
 On June 5, 1991, KPERS filed suit in the District Court of Shawnee County, Kansas, to recover damages resulting from the purchase of Home Savings Association debentures for the Kansas Employees' Retirement Fund. KPERS named Michael K. Russell (its former board chairman), Reimer & Koger Associates (its former investment advisor), Peat, Marwick, & Mitchell Company (its former accounting firm), Gage & Tucker (its former law firm), and the Home Savings Association's officers and directors[2] as defendants. Along with various allegations of fraud, breach of fiduciary duty, professional negligence, and gross negligence, KPERS claimed that the Home Savings directors violated the Kansas Securities Act, Kan.Stat.Ann. Sec. 17-1268 (1983). In response, the Home Savings directors moved to dismiss KPERS' claims as derivative of claims that belonged solely to the RTC, and argued that the RTC was a necessary party.
 
 
 3
 Shortly thereafter, the RTC moved for leave to intervene in order to remove the action to federal court, where the RTC would attempt to have the case dismissed. On August 21, 1992, the Kansas district court denied the Home Savings directors' motion to dismiss and held that KPERS' claims were nonderivative. The Kansas court never ruled on the RTC's motion requesting leave to intervene.
 
 
 4
 On October 2, 1992, the Home Savings directors filed a third-party petition against the RTC, claiming negligent mismanagement of Home Savings, which caused a loss of funds that could have been used to repay part of the KPERS investments, and seeking indemnification under 12 C.F.R. Sec. 545.121. On October 8, 1992, at approximately 4:00 p.m., KPERS' counsel contacted the Shawnee County district court clerk to discuss the filing of a motion to strike the third-party claims or sever them from the original claims. The clerk advised the lawyers that the office would remain open after the normal 5:00 p.m. closing to permit the filing of pleadings. KPERS' counsel also contacted the chambers of the district judge handling the case, stating that KPERS "desired to present [a] severance motion to the ... court for ex parte consideration that day." Opposing counsel were not notified.
 
 
 5
 At 5:26 p.m., KPERS' counsel appeared ex parte before the Kansas district judge to present its motion to strike the third-party petition or, alternatively, sever the third-party claims from the original lawsuit. The Kansas district judge stated:
 
 
 6
 The Court is familiar with the history of this case, [and] feels that under the circumstances the addition of the Resolution Trust Corporation ... by the third-party petition would subject this case to removal under the federal statutes.... [T]he Court [does] not feel that ... to maintain [the third-party claims] in the same case [as the principal claims] and subjecting [the entire] case to removal would be in the best interests of the advancement of the princip[al] case.... I ... sign ex parte the order to sever and direct ... that the third party claim be severed and filed ... as a separate case entirely from the previous [case].... [T]he Court considers this matter on an emergency basis.
 
 
 7
 The judge also provided that any aggrieved party could file a motion for reconsideration and the court would consider such motions along with KPERS' motion to dismiss the third-party claims.
 
 
 8
 None of the parties filed a motion for reconsideration. Instead, five days after the Kansas court entered the severance order, the RTC filed a notice of removal for the entire case--both the original and third-party claims. In response, KPERS asked the federal district court to remand the "original case" to the Kansas court because the RTC was no longer a party to that action. The district court held a hearing on KPERS' motion for remand, and asked KPERS' counsel about the motivation behind the severance and whether the defendants' counsel had been called before the ex parte proceeding occurred:
 
 
 9
 THE COURT: [T]here was time to call the clerk's office and make this arrangement, but there was not time to call any other lawyer and suggest, "Hey, you might want to get over here because we're going to present this to the judge."
 
 
 10
 MR. DEACY: That's so, as I understand it, Your Honor.
 
 
 11
 THE COURT: And there was an emergency.
 
 
 12
 MR. DEACY: It was an emergency.
 
 
 13
 THE COURT: What was the emergency?
 
 
 14
 MR. DEACY: The emergency was that so long as the cases were one case, the RTC could remove it all.
 
 
 15
 THE COURT: And they could--had that right under federal law to do so.
 
 
 16
 MR. DEACY: They had the right under federal law so long as they were a party to the case.
 
 
 17
 THE COURT: Right. And so the emergency was to do something quickly to prevent the RTC from removing the case?
 
 
 18
 MR. DEACY: That's right, Your Honor.
 
 
 19
 KPERS' counsel also assured the district court that the Kansas judge severed the case specifically to prevent removal:
 
 
 20
 THE COURT: And it stated that the reason the judge is doing this is to, in essence, to prevent the RTC from removing the case.
 
 
 21
 MR. DEACY: No question about it.
 
 
 22
 . . . . .
 
 
 23
 THE COURT: ... [T]he only reason the judge gave for entering the severance order on an emergency basis was to prevent the RTC from removing the case, which everybody believed the RTC had the right to do at the instant before the judge signed this order.
 
 
 24
 MR. DEACY: Before the severance, yes, Your Honor. That's right....
 
 
 25
 . . . . .
 
 
 26
 THE COURT: ... KPERS' position, as I understand it, is that but for the order that the judge entered, the case would have been removed by the RTC, KPERS and the judge did not want it removed by the RTC, and so this order was entered, ... not severing the third party petition or complaint for a separate trial, but severing it into another case.
 
 
 27
 MR. DEACY: That's true, Your Honor.
 
 
 28
 Ruling from the bench, the district court emphasized that the Kansas court's only stated reason for severing the action into two separate cases was to defeat the RTC's ability to exercise its right to remove the entire action to federal court. The district court determined that granting severance for the sole purpose of defeating a congressionally conferred right violated the Supremacy Clause, U.S. Const. art. VI, cl. 2. Thus, the court held that the severance order was void and the entire case could be removed to federal court. In addition, the court stated that it was not bound by state procedural maneuverings in determining whether it had subject matter jurisdiction. The court held that the RTC had the right to remove the entire case, even though it was a third-party defendant, and that a state court could not defeat that right by using a mere procedural maneuver--arbitrarily dividing one case into two separate cases. Finally, the court rejected KPERS' argument that the third-party claims were frivolous and thus not within the district court's subject matter jurisdiction. The court reasoned that because the RTC, as receiver, was a successor of Home Savings, it could be liable for indemnification of the Home Savings directors under 12 C.F.R. Sec. 545.121. The district court then certified the matter for interlocutory appeal.
 
 I.
 
 29
 On appeal, KPERS argues that the district court erred in holding that the severance order was void for violation of the Supremacy Clause. More specifically, KPERS contends that the district court did not have the right to review the Kansas court's severance order in determining whether to remove the original and third-party actions; that the Kansas court's order effectively divided the cases, the RTC was no longer a party to the original action, and thus, the RTC had no congressionally conferred right to remove it; and that the severance order did not frustrate any congressional purpose, and any conflict that might have existed between the severance and the RTC's right to remove was illusory.
 
 
 30
 Whether a case is removable is a question of federal law to be decided by the federal courts. See Harrison v. St. Louis & San Francisco R.R. Co., 232 U.S. 318, 329, 34 S.Ct. 333, 335-36, 58 L.Ed. 621 (1914); see also Terral v. Burke Constr. Co., 257 U.S. 529, 557-58, 42 S.Ct. 188, 254, 66 L.Ed. 352 (1922); Stoll v. Hawkeye Casualty Co., 185 F.2d 96, 99 (8th Cir.1950). The district court therefore had jurisdiction to decide whether the RTC could remove the original and third-party actions under 12 U.S.C. Sec. 1441a(l ).[3] Likewise, we have jurisdiction to determine whether the district court properly decided to allow removal, and we review the district court's decision de novo.
 
 
 31
 To determine whether the RTC could remove both the original and third-party claims, the district court had to examine the procedural status of the "cases" as of the date the RTC requested removal. See Pullman Co. v. Jenkins, 305 U.S. 534, 540, 59 S.Ct. 347, 350, 83 L.Ed. 334 (1939). In so doing, the district court had to decide whether the Kansas court's severance order created two separate and distinct cases and caused the RTC to be a named party to the third-party action, but a "stranger" to the original action. Thus, the district court did not review the Kansas court's order for "correctness" under Kansas law or in the sense that an appellate court might review a trial court. Instead, the district court examined the order as an integral part of its removal decision relating to both the original and third-party claims.[4] See Harrison, 232 U.S. at 329, 34 S.Ct. at 335-36.
 
 
 32
 In 1989, Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act, giving the RTC the right to remove cases to federal court:
 
 
 33
 The Corporation, in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit, or proceeding is pending, to the United States district court for the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of any institution for which the Corporation has been appointed conservator or receiver if the action, suit, or proceeding is brought against the institution or the Corporation as conservator or receiver of such institution.
 
 
 34
 12 U.S.C. Sec. 1441a(l )(3)(A) (Supp. III 1991). When the Home Savings directors brought the RTC into the action as a third-party defendant, the RTC had the right to remove "the entire case" to federal court. California v. Keating, 986 F.2d 346, 348-49 (9th Cir.1993) (emphasizing that the RTC could remove the entire action at any time); see also In re Surinam Airways Holding Co., 974 F.2d 1255, 1260 (11th Cir.1992) (holding that a foreign state third-party defendant's removal under 28 U.S.C. Sec. 1441(d) (1988) entitled it to remove the entire case, not just the third-party claims against it); Nolan v. The Boeing Co., 919 F.2d 1058, 1066 (5th Cir.1990) (concluding that when a foreign state third-party defendant removes under Sec. 1441(d), "it removes not just the third-party claims but the main claims as well"), cert. denied, --- U.S. ----, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991).
 
 
 35
 KPERS agrees with the analysis to this point. In fact, this is admittedly why KPERS went to the Kansas court to request severance on an "emergency" basis, and why the Kansas court granted the ex parte order. KPERS argues that once the Kansas court divided the case, the RTC was no longer a party to the original action and only had a right to remove the separate, third-party action. The appellees, on the other hand, contend that the Supremacy Clause renders the severance order void.
 
 
 36
 The Supremacy Clause provides that the Constitution "and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Thus:
 
 
 37
 when state law touches upon the area of federal statutes enacted pursuant to constitutional authority, "it is 'familiar doctrine' that the federal policy 'may not be set at naught, or its benefits denied' by the state law. This is true, of course, even if the state law is enacted in the exercise of otherwise undoubted state power."
 
 
 38
 Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 479-80, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974) (citations omitted). In addition, "[a] state court may not deny a federal right, when the parties and controversy are properly before it, in the absence of a 'valid excuse.' " Howlett v. Rose, 496 U.S. 356, 368, 110 S.Ct. 2430, 2438-39, 110 L.Ed.2d 332 (1990). "An excuse that is inconsistent with or violates federal law," however, "is not a valid excuse: The Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source." Id.
 
 
 39
 It is also well established that states cannot directly or indirectly prevent, defeat, or limit the free exercise of the right to remove. Goldey v. Morning News, 156 U.S. 518, 523, 15 S.Ct. 559, 561, 39 L.Ed. 517 (1895) (stating that the state legislature and judiciary can neither defeat the congressionally conferred right to remove a case from state court to federal court, nor limit the effect of such removal); see also Terral, 257 U.S. at 532, 42 S.Ct. at 189; Harrison, 232 U.S. at 328, 34 S.Ct. at 335. Likewise, the federal courts should not condone a procedure intended to prevent removal when a party has the right to remove. See Wecker v. National Enamelling & Stamping Co., 204 U.S. 176, 185-86, 27 S.Ct. 184, 187-88, 51 L.Ed. 430 (1907); see also Anderson v. Home Ins. Co., 724 F.2d 82, 83-84 (8th Cir.1983) (joinder to deprive federal courts of jurisdiction is fraudulent and will not prevent removal).
 
 
 40
 Congress gave the RTC a broad right to remove any action, and until the Kansas court acted ex parte with the stated purpose of limiting the RTC's right to remove, the RTC could have removed the entire case to federal court. As KPERS' counsel admitted in his discussion with the district court and in his brief before this court, the Kansas court intended to keep the original action in state court by preventing the RTC from exercising its federal right to remove. On its face the Kansas court's order violates the Supremacy Clause. We conclude that the district court did not err in holding the severance order void.
 
 
 41
 Nevertheless, even if we assume the Kansas court effectively severed the action into two cases, that procedural maneuver did not divest the RTC of its interest in the original action. Under both the Kansas and Federal Rules of Civil Procedure, a "third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim." See Kan.Stat.Ann. Sec. 60-214 (1983); Fed.R.Civ.P. 14(a). Because a third-party defendant cannot relitigate the question of a third-party plaintiff's liability to the original plaintiff, this provision protects the third-party defendant against any prejudice that might result from the third-party plaintiff's failure to assert a particular defense against the original plaintiff. See, e.g., United States v. Lumbermens Mut. Casualty Co., 917 F.2d 654, 658 n. 5 (1st Cir.1990) (allowing a third-party defendant that was not a "party" to the original action to raise on appeal claims of error based in the original action); Glick v. White Motor Co., 458 F.2d 1287, 1291 n. 7 (3d Cir.1972) (permitting the third-party defendant to take part in the trial and to examine and cross-examine witnesses as the rules of evidence permit); F & D Property Co. v. Alkire, 385 F.2d 97, 100 (10th Cir.1967) (stating that "a third party defendant is in the lawsuit as an adverse a party to the same extent as the defendant and must act accordingly"); Williams v. Keyes, 125 F.2d 208, 209 (5th Cir.), cert. denied, 316 U.S. 699, 62 S.Ct. 1297, 86 L.Ed. 1768 (1942); 6 Charles A. Wright et al., Federal Practice & Procedure Sec. 1457 (2d ed. 1990). The provision also reduces the possibility of collusion between the plaintiff and the third-party plaintiff.[5] See Wright, supra.
 
 
 42
 In Nolan, the Fifth Circuit addressed a similar question regarding the removability of an action involving a foreign state that had been named as a third-party defendant. 919 F.2d at 1061. The state court in Nolan ordered severance of the third-party claims in an ex parte proceeding. Id. The third-party defendant removed "the entire case," the district court refused to remand, and the plaintiffs appealed. Id. The Fifth Circuit determined that 28 U.S.C. Sec. 1441(d) granted a foreign state the right to remove an entire action, not just the claims against it, regardless of severance. Id. at 1065. The court found no significant difference between the authorization for removal of an entire action by a sovereign co-defendant, and removal of an entire action by a sovereign third-party defendant. Id. In fact, the court determined that the third-party's interests in removal may be more compelling because its liability is logically dependent on the liability of the defendant in the original action--to fully protect itself the third-party defendant may be called upon to assert defenses on behalf of the defendant. Id.
 
 
 43
 Thus, once the Home Savings directors brought the RTC into the action as a third-party defendant, the RTC became inextricably involved in the entire action--both the original and third-party claims. Although both the Kansas and Federal Rules of Civil Procedure allow a court to sever the third-party claims from the original claims, such severance does not exclude the third-party defendant from participation in the original action nor deprive it of its ability to exercise its congressionally conferred right to remove the entire case to federal court. See Nolan, 919 F.2d at 1065.
 
 II.
 
 44
 KPERS next argues that the district court erred in holding that the Home Savings directors' indemnification claim against the RTC is not frivolous.
 
 
 45
 In Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), the Supreme Court stated:
 
 
 46
 Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a proper cause of action on which [the plaintiff] could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.... [A] suit may sometimes be dismissed[, however,] for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.
 
 
 47
 (citations omitted); see also Hagans v. Lavine, 415 U.S. 528, 536-37, 542-43, 94 S.Ct. 1372, 1378-79, 1381-82, 39 L.Ed.2d 577 (1974).
 
 
 48
 As we stated earlier, the Home Savings directors' third-party petition against the RTC contains two counts. First, the directors claim that the RTC negligently mismanaged Home Savings after it took control. The directors also claim that if they are found liable in the original action with KPERS, they are entitled to indemnification from Home Savings under 12 C.F.R. Sec. 545.121, and the RTC assumed this liability as a receiver under 12 U.S.C. Sec. 1821(d) (1988). Thus, even if we were to strike the second claim as legally frivolous in accordance with KPERS' arguments, the district court would still retain jurisdiction over the entire case as the negligent mismanagement claim would remain.
 
 
 49
 KPERS relies on our decisions in Condor Corp. v. City of St. Paul, 912 F.2d 215 (8th Cir.1990), and Adams v. Resolution Trust Corp., 927 F.2d 348 (8th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991), as well as the Fifth Circuit's decision in First Indiana Federal Savings Bank v. Federal Deposit Insurance Co., 964 F.2d 503 (5th Cir.1992), to support its argument that even if the Home Savings defendants could prevail on their indemnification claim against the RTC as successor, there are no Home Savings assets with which the RTC could satisfy the judgment, and therefore, the claim is moot and frivolous.[6] The complaints in Condor, Adams, and First Indiana Savings, however, did not contain an alternative, direct claim against the defendant as this third-party complaint contains. The plaintiffs in Condor, Adams, and First Indiana Savings had only indirect claims against a receiver or successor--claims derived from the original institution's liability to the plaintiffs. Striking the indirect claims in those cases disposed of the entire matter. In contrast, the Home Savings directors have asserted a negligent mismanagement claim directly against the RTC, and as we stated earlier, whether the district court erred by concluding that the indemnification claim was not frivolous is not of import regarding removal jurisdiction as the mismanagement claim would survive a decision to strike and the court would retain jurisdiction. Under either count of the third-party claim, the RTC may participate in the original case and assert defenses on behalf of the Home Savings directors, contending that the directors were not liable for the KPERS loss.[7] Thus, we need not consider at length the arguments regarding the indemnification claim.
 
 
 50
 Section 545.121 requires that a federal savings association indemnify its directors, officers, and employees for liability and costs they may incur as a result of their position. 12 C.F.R. Sec. 545.121. The district court determined that some of the claims against the Home Savings directors could be characterized as negligence or strict liability claims that might entitle the Home Savings directors to indemnification. The court concluded that the RTC, as a receiver of Home Savings, was a successor to Home Savings, 12 U.S.C. Sec. 1821(d) (1988), and therefore, might be liable for indemnification of the directors, officers, or employees under 12 C.F.R. Sec. 545.121. In addition, the RTC concedes that the claims are not frivolous, the Kansas court did not strike the third-party claims as KPERS requested in its motion to strike or alternatively sever the third-party claims, and the parties submitted lengthy briefs with opposing arguments regarding the merits of the claim and the Home Savings directors' ability to collect on a judgment. Under these circumstances, we cannot say the third-party claims are "so patently without merit as to justify ... the court's dismissal for want of jurisdiction." Bell, 327 U.S. at 683, 66 S.Ct. at 776; Hagans, 415 U.S. at 542-43, 94 S.Ct. at 1381-82. The RTC may, if it deems appropriate, request dismissal of either or both claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, or move for summary judgment. The outcome of these motions,[8] however, would not defeat the district court's jurisdiction as each is considered a ruling on the merits. See Bell, 327 U.S. at 682-83, 66 S.Ct. at 776.
 
 
 51
 Accordingly, we affirm the order of the district court.
 
 
 
 [1]
 The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri
 
 
 [2]
 Frank Morgan, Sherman Dreiseszun, Leland Gerhart, I.I. Ozar, Raymond Gifford, Ralph E. Kiene, Randall M. Nay, Tony Salazar, and Philip Pistilli
 
 
 [3]
 The RTC removed the action to the United States District Court for the Western District of Missouri because Home Savings principal place of business was located in Kansas City, Missouri. See 12 U.S.C. Sec. 1441a(l )(3)(A)
 
 
 [4]
 Although some of the appellees urge that the Kansas court's actions are void because they did not comply with Kansas law, we decline to discuss this issue as it takes us beyond the review necessary for determining whether removal is appropriate
 
 
 [5]
 These same reasons answer KPERS' argument that the severance order did not conflict with the congressional objective of giving the RTC the right to remove
 
 
 [6]
 The Home Savings defendants point out that the "frivolousness test" may not apply at all given the RTC's special removal statute, which would allow the RTC access to the federal courts regardless of the nature of the claim. We need not answer this question, however, because we have determined that the court retains jurisdiction over the entire action regardless of whether the indemnification claim is frivolous
 
 
 [7]
 Whether the assertion of such defenses is strategically wise is not for us to decide. We merely keep the avenues open to permit the RTC to assert whatever defenses it wishes
 
 
 [8]
 We express no opinion regarding the merits of the claims or the ability of the claims to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6). See Hagans, 415 U.S. at 542 n. 10, 94 S.Ct. at 1382 n. 10